304 P.3d 252

Paulette Kaʻanohiokalani KALEIKINI,
Petitioner/Plaintiff–Appellant,

v.

Wayne YOSHIOKA, in his official capacity as Director of the City and County of Honolulu's Department of Transportation Services; City and County Of Honolulu; Honolulu City Council; Kirk Caldwell, in his official capacity as Mayor; City and County Of Honolulu Department of Transportation Services; City and County of Honolulu Department of Planning and Permitting; William J. Aila, Jr., in his official capacity as Chairperson of the Board of Land and Natural Resources and state historic preservation officer; Puaʻalaokalani Aiu, in her official capacity as administrator of the State Historic Preservation Division; Board of Land and Natural Resources; Department of Land and Natural Resources; Neil Abercrombie, in his official capacity as Governor; and Oʻahu Island Burial Council, Respondents/Defendants–Appellees.

No. SCAP–11–0000611.

Supreme Court of Hawaiʻi.

May 2, 2013.

Reconsideration Denied May 17, 2013.

David Kimo Frankel, Honolulu, and Ashley K. Obrey, for petitioner.

William J. Wynhoff, for State respondents.

Robert C. Godbey, Honolulu, Don S. Kitaoka, Gary Y. Takeuchi, John P. Manaut, Honolulu, and Lindsay N. McAneeley, for City respondents.

William Meheula, Honolulu, and Keani Alapa, for amicus curiae.

RECKTENWALD, C.J., NAKAYAMA, and MCKENNA, JJ., CIRCUIT JUDGE BROWNING, in place of ACOBA, J., RECUSED, and CIRCUIT JUDGE TO'OTO'O, in place of DUFFY, J., recused.

Opinion of the Court by
RECKTENWALD, C.J.

Paulette Ka'anohiokalani Kaleikini requests that this court award $255,158.00 in attorney's fees and $2,510.24 in costs against City and State defendants[1] for work performed in the trial court and on appeal in relation to *Kaleikini v. Yoshioka*, 128 Hawai'i 53, 283 P.3d 60 (2012). For the reasons set forth below, we grant in part and deny in part Kaleikini's request for fees and costs.

---

1. The City defendants are: Wayne Yoshioka, in his official capacity as Director of the City and County of Honolulu's Department of Transportation Services; the City and County of Honolulu; the Honolulu City Council; Peter Carlisle, in his official capacity as Mayor of the City and County of Honolulu; the City and County of Honolulu Department of Transportation Services; and the City and County of Honolulu Department of Planning and Permitting. *See Kaleikini v. Yoshioka*, 128 Hawai'i 53, 56 n. 1, 283 P.3d 60, 63 n. 1 (2012). Because Peter Carlisle was sued in his official capacity, Kirk Caldwell was automatically substituted in his place as respondent/defendant-appellee. Hawai'i Rules of Appellate Procedure (HRAP) Rule 43(c)(1) (2012).

The State defendants are: William J. Aila, Jr., in his official capacity as Chairperson of the Board of Land and Natural Resources (BLNR) and state historic preservation officer; Pua'alaokalani Aiu, in her official capacity as administrator of the State Historic Preservation Division (SHPD); the BLNR; the Department of Land and Natural Resources (DLNR); Neil Abercrombie, in his official capacity as Governor of the State of Hawai'i; and the O'ahu Island Burial Council (OIBC). However, Kaleikini explained in her complaint that the OIBC was named as "an interested party," whose interests were "more properly aligned with [Kaleikini]." Accordingly, reference to the State in this opinion does not include the OIBC. *See id.* at 56 n. 2, 283 P.3d at 63 n. 2.

## I. Background

### A. Underlying appeal

The relevant factual background is set forth in this court's published opinion:

Kaleikini brought this suit against the City and County of Honolulu and the State of Hawai'i, challenging the approval of the Honolulu High–Capacity Transit Corridor Project (rail project or project). The rail project involves the construction of an approximately 20–mile fixed guideway rail system from West O'ahu to Ala Moana Center. Construction on the rail project is planned to take place in four phases.... It is undisputed that the rail project has a "high" likelihood of having a potential effect on archeological resources in certain areas of Phase 4, which includes Kaka'ako.

Kaleikini argued that the rail project should be enjoined until an archaeological inventory survey, which identifies and documents archaeological historic properties and burial sites in the project area, is completed for all four phases of the project. More specifically, Kaleikini argued that Hawai'i Revised Statutes chapters 6E, 343, and 205A, and their implementing rules, require that an archaeological inventory survey be completed prior to any approval or commencement of the project. Kaleikini asserted that the failure to complete an archaeological inventory survey prior to the start of construction jeopardized the integrity of native Hawaiian burial sites by foreclosing options such as not building the rail, changing its route, or using a technology that would have less impact on any sites.

The City moved to dismiss Kaleikini's complaint and/or for summary judgment, and the State joined in the motion. The City acknowledged that an archaeological

inventory survey was required for each phase of the rail project. However, .... the City and State contended that as long as an archeological inventory survey had been completed for a particular phase, construction could begin on that part of the project even if the surveys for the other phases had not yet been completed.

*Id.* at 56–57, 283 P.3d at 63–64 (footnotes omitted).

The circuit court granted summary judgment in favor of the City and State on all of Kaleikini's claims. *Id.* at 57, 283 P.3d at 64. Kaleikini appealed, and this court held that "the SHPD failed to follow its own rules when it concurred in the rail project prior to the completion of an archaeological inventory survey for the entire project":

In sum, the SHPD failed to comply with HRS chapter 6E and its implementing rules when it concurred in the rail project prior to the completion of the required archaeological inventory survey for the entire project. The City similarly failed to comply with HRS chapter 6E and its implementing rules by granting a special management area permit for the rail project and by commencing construction prior to the completion of the historic preservation review process.

*Id.* at 57, 66, 283 P.3d at 64, 73.

Accordingly, this court vacated the circuit court's judgment on Counts 1 through 4 of Kaleikini's complaint, which challenged the rail project under HRS chapter 6E, and remanded for further proceedings. *Id.*

### B. Request for attorney's fees and costs

Kaleikini timely filed a request for attorney's fees and costs. Kaleikini requests costs pursuant to HRAP Rule 39,[2] Hawai'i

---

**2.** HRAP Rule 39 (2012) provides, in pertinent part:

(a) **Civil Costs; To Whom Allowed.** Except in criminal cases or as otherwise provided by law, if an appeal or petition is dismissed, costs shall be taxed against the appellant or petitioner upon proper application unless otherwise agreed by the parties or ordered by the appellate court; if a judgment is affirmed or a petition denied, costs shall be taxed against the appellant or petitioner unless otherwise or-

dered; if a judgment is reversed or a petition granted, costs shall be taxed against the appellee or the respondent unless otherwise ordered; if a judgment is affirmed in part and reversed in part, or is vacated, or a petition granted in part and denied in part, the costs shall be allowed only as ordered by the appellate court. If the side against whom costs are assessed has multiple parties, the appellate court may apportion the assessment or impose it jointly and severally.

Rules of Civil Procedure (HRCP) Rule 54(d),[3] and HRS § 607–24.[4] Specifically, she requests costs in the amount of $2,510.24, which includes both trial court and appellate costs. Alternatively, she requests costs in the amount of $343.00 for the appeal only.

Kaleikini also requests attorney's fees pursuant to the private attorney general doctrine, in relation to work performed by David Kimo Frankel and Ashley Obrey, Native Hawaiian Legal Corporation (NHLC) attorneys, at both the trial and appellate levels. Specifically, Kaleikini seeks fees totaling $127,579.00, which includes $96,495.00 for 275.7 hours of work performed by Frankel at the rate of $350.00 per hour, and $31,084.00 for 163.6 hours of work performed by Obrey at the rate of $190.00 per hour. Alternatively, Kaleikini seeks fees totaling $54,995.00 for the appeal only, which includes $48,440.00 for 138.4 hours of work performed by Frankel, and $6,555.00 for 34.5 hours of work performed by Obrey. Additionally, Kaleikini asks that her requested fees be enhanced by a multiplier of two.

The City and State filed objections to Kaleikini's request, and Kaleikini filed a reply to each of the objections.[5]

## II. DISCUSSION

As set forth below, we resolve Kaleikini's request as follows. First, we deny Kaleikini's request for fees and costs for trial level work, without prejudice to Kaleikini seeking those fees in the circuit court. Second, we conclude that Kaleikini is entitled to an award of appellate fees because (1) Kaleikini prevailed on the disputed main issues before this court and therefore is the prevailing party on appeal; and (2) Kaleikini's case meets all three prongs of the private attorney general doctrine. Third, Kaleikini's request for fees and costs against the State is

---

**(b) Costs For and Against the State of Hawai'i.** In cases involving the State of Hawai'i or an agency or officer thereof, if an award of costs against the State is authorized by law, costs shall be awarded in accordance with the provisions of this rule; otherwise costs shall not be awarded for or against the State of Hawai'i, its agencies, or its officers acting in their official capacities.

**(c) Costs Defined.** Costs in the appellate courts are defined as: (1) the cost of the original and one copy of the reporter's transcripts if necessary for the determination of the appeal; (2) the premiums paid for supersedeas bonds or other bonds to preserve rights pending appeal; (3) the fee for filing the appeal; (4) the cost of printing or otherwise producing necessary copies of briefs and appendices, provided that copying costs shall not exceed 20¢ per page; (5) necessary postage, cost of facsimiles, intrastate travel, long distance telephone charges; and (6) any other costs authorized by statute or rule.

3. HRCP Rule 54(d) (2011) provides:

**(d) Costs; attorneys' fees.**

(1) Costs other than attorneys' fees. Except when express provision therefor is made either in a statute or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs; but costs against the State or a county, or an officer or agency of the State or a county, shall be imposed only to the extent permitted by law. Costs may be taxed by the clerk on 48 hours' notice. On motion served within 5 days thereafter, the action of the clerk may be reviewed by the court.

4. HRS § 607–24 (1993) provides, in pertinent part:

Neither the State nor any county or any political subdivision, board, or commission thereof, nor any officer, acting in the officer's official capacity on behalf of the State or any county or other political subdivision, board, or commission thereof, shall be taxed costs or required to pay or make any deposit for the same or file any bond in any case whether for costs, on motion for new trial, or on appeal, or for any other purpose whatsoever. In all cases in which a final judgment or decree is obtained against the State, county, or other political subdivision or any board or commission thereof, any and all deposits for costs made by the prevailing party shall be returned to the prevailing party, and the prevailing party shall be reimbursed by the State, county, or other political subdivision, board, or commission thereof, as the case may be, all actual disbursements, not including attorney's fees or commissions, made by the prevailing party and approved by the court.

(Emphasis added).

5. Faith Action for Community Equity and Pacific Resource Partnership (FACE/PRP) previously filed an amicus curiae brief in this case, and also filed an objection to Kaleikini's fees request "to the extent [it] may be read to seek attorneys' fees and costs against FACE/PRP[.]" Because Kaleikini does not seek fees or costs from FACE/PRP, we do not discuss this objection further.

barred by sovereign immunity. Fourth, although we award fees against the City, we reduce some of Kaleikini's requested hours and her attorneys' requested hourly rates to achieve a reasonable attorney fee award. Fifth, Kaleikini is not entitled to an enhancement of the lodestar amount. Finally, Kaleikini is entitled to her requested appellate costs.

Accordingly, for the reasons set forth below, we award Kaleikini $41,192.00 in fees and $343.00 in costs against the City.

### A. Kaleikini's request for fees and costs attributable to work performed at the trial level is more properly within the trial court's discretion

Kaleikini seeks fees and costs relating to work performed both at the trial level and on appeal. Kaleikini asserts that "[i]t is not entirely clear that this Court is prohibited from awarding attorneys' fees for work at the trial court level[.]" (Citing *Fought & Co., Inc. v. Steel Eng'g & Erection, Inc.*, 87 Hawai'i 37, 52, 951 P.2d 487, 502 (1998); *S. Utsunomiya Enters., Inc. v. Moomuku Country Club*, 76 Hawai'i 396, 402, 879 P.2d 501, 507 (1994)). She further argues, "Given that the work undertaken in the circuit court was essential in order to prevail, all the fees from the entire case should be awarded." The City and State argue that Kaleikini should seek fees incurred at the trial level in the trial court. Kaleikini responds that this court should award her trial level fees and costs based on principles of judicial economy.

■ "Although HRAP Rule 39(d) and HRS § 607–14[6] could be construed to allow this court to make such awards [of trial-level attorney's fees], decisions about fees incurred at the trial level are more properly within the trial court's discretion." *S. Utsunomiya En-*

*terprises, Inc.*, 76 Hawai'i at 402, 879 P.2d at 507. This is because

> [t]here are a multitude of situations that arise during litigation at the trial level that may contribute to the legal and strategic decisions made by each party; the trial judge is in the best position to ascertain the motivations of the parties and the reasonableness of actions undertaken by counsel and the parties.

*Nelson v. Univ. of Hawai'i*, 99 Hawai'i 262, 269, 54 P.3d 433, 440 (2002).

■ Accordingly, the trial court is in the best position to determine the reasonableness of fees and costs incurred at the trial level. We therefore deny Kaleikini's request for fees and costs for work performed at the trial level, without prejudice to her seeking those fees and costs in the circuit court. Accordingly, the remainder of this opinion addresses only Kaleikini's request for fees and costs attributable to her appeal.

### B. Kaleikini is the prevailing party on appeal

The first issue this court must resolve regarding Kaleikini's request for fees and costs is whether Kaleikini is the prevailing party on appeal. *See Sierra Club v. Dep't of Transp. (Superferry II)*, 120 Hawai'i 181, 215, 202 P.3d 1226, 1260 (2009) ("The first issue that must be determined regarding the fee and cost award is whether Sierra Club was the prevailing party."). Kaleikini argues that she is the prevailing party because she prevailed on the disputed main issue in her appeal. The City argues Kaleikini did not prevail on the disputed main issue because she did not prevail on the claims she brought pursuant to HRS chapter 343 and 205A.[7]

■ Where, as here, there is no final judgment clearly stating which party prevailed,[8]

6. HRS § 607–14 governs attorneys' fees in actions in the nature of assumpsit and is inapplicable in the instant case.

7. The State does not present any argument on this issue.

8. In *Kamaka v. Goodsill Anderson Quinn & Stifel*, 117 Hawai'i 92, 122, 176 P.3d 91, 121 (2008), this court reviewed a trial court's award of attorney's fees and costs entered pursuant to HRS

§ 607–14 (Supp.1997), and noted that, "for purposes of HRS § 607–14, the party in whose favor judgment was entered is the prevailing party." In the instant case, this court did not enter judgment in favor of either party, but rather vacated the circuit court's judgment and remanded for further proceedings. Accordingly, *Kamaka* does not resolve whether Kaleikini is the prevailing party on appeal.

the court "is required to first identify the principle issues raised by the pleadings and proof in a particular case, and then determine, on balance, which party prevailed on the issues." *Superferry II*, 120 Hawai'i at 216, 202 P.3d at 1261 (quoting *MFD Partners v. Murphy*, 9 Haw.App. 509, 515, 850 P.2d 713, 716 (1992)). A party "will be deemed to be the successful party for the purpose of taxing costs and attorney's fees" "where [that] party prevails on the disputed main issue, even though not to the extent of his original contention[.]" *Food Pantry, Ltd. v. Waikiki Bus. Plaza, Inc.*, 58 Haw. 606, 620, 575 P.2d 869, 879 (1978) (footnote omitted).

Here, Kaleikini's complaint in the circuit court alleged six counts:

First, Kaleikini alleged that the City's grant of a special management area permit for the rail project and its decision to commence construction on the project prior to the completion of an AIS violated HRS §§ 6E–8 and 6E–42, and their implementing rules, HAR chapters 13–275 (2002) and 13–284 (2002) (Counts 1–2). Kaleikini further alleged that the DLNR, through the SHPD, violated HRS §§ 6E–8 and 6E–42, and their implementing rules, in authorizing an AIS to be postponed (Counts 3–4). Kaleikini also alleged that Governor Abercrombie violated HRS chapter 343 by accepting the final EIS for the rail project, because the final EIS did not contain an AIS and was therefore incomplete (Count 5). Finally, Kaleikini alleged that the City and State Defendants had failed to "give full consideration of the impact of the [rail project] on iwi and cultural and historic values prior to decisionmaking" (Count 6).

*Kaleikini*, 128 Hawai'i at 60–61, 283 P.3d at 67–68 (footnotes omitted).

■ At the heart of each count was Kaleikini's argument that an AIS must be completed for all four phases of the rail project prior to any approval or commencement of the project. *See id.* at 61, 283 P.3d at 68. The circuit court orally granted summary judgment in favor of the City and State on all counts on the ground that the phased approach to the AIS for the rail project was not

prohibited by law. *Id.* at 66, 283 P.3d at 73. Accordingly, the circuit court entered final judgment in favor of the City, State, and OIBC, and against Kaleikini on all of her claims. *Id.* Thus, the City, State, and OIBC were the prevailing parties in the circuit court.

Kaleikini's primary argument on appeal was that the City and State failed to comply with HRS §§ 6E–8 and 6E–42 and their implementing rules by allowing a decision on the project to be made prior to the completion of an AIS for the entire project (Counts 1–4). *Id.* Additionally, Kaleikini argued that the final EIS was inadequate under HRS chapter 343 because it did not contain a completed AIS (Count 5), *id.* at 81, 283 P.3d at 88, and that the City and State failed to give full consideration to cultural and historic values, as required under HRS chapter 205A (Count 6), *id.* at 84, 283 P.3d at 91.

This court held that the circuit court erred in granting summary judgment in favor of the City and State on Counts 1 through 4 because an AIS for all four phases of the project was required prior to approval of the project. *Id.* at 72, 283 P.3d at 79. Accordingly, this court vacated the judgment with respect to these counts, and remanded to the circuit court for further proceedings. *Id.* at 88, 283 P.3d at 95. However, this court held that the circuit court properly granted summary judgment in favor of the City and State on Counts 5 and 6. *Id.*

The City argues that the case·is "[a]t best, a draw" because Kaleikini did not prevail on Counts 5 and 6. However, this court noted that Kaleikini's "primary argument on appeal" concerned Counts 1 through 4, and this court ruled in favor of Kaleikini on those counts. *Id.* at 66, 68, 283 P.3d at 73, 75. Because Kaleikini prevailed on the "primary argument on appeal[,]" she prevailed on the disputed main issue.

The City also argues that Kaleikini cannot be deemed the prevailing party because this court remanded for further proceedings and the proceedings therefore have not concluded. In support of this argument the City cites *Nelson*. *Nelson* concerned a request for fees brought pursuant to statute, which

allowed for fees "in addition to any judgment awarded to the plaintiff or plaintiffs[.]" 99 Hawai'i at 265, 54 P.3d at 436 (emphasis added). Thus, this court was required to determine whether the plaintiff had been awarded a "judgment" within the meaning of the statute. *Id.* This court noted that the forms of relief envisioned by the statute required a finding in favor of the plaintiff on the merits. *Id.* at 266, 54 P.3d at 437. "Consequently, a judgment on appeal that merely vacates a trial court judgment unfavorable to the plaintiff and places the plaintiff back where the plaintiff started does not, in itself, provide any grounds for an award of fees to the plaintiff." *Id.*

*Nelson* is distinguishable from the instant case for two reasons. First, Kaleikini does not seek fees pursuant to statute, but rather pursuant to the private attorney general doctrine. As discussed below, the private attorney general doctrine does not require that a plaintiff receive a final judgment in his or her favor before fees may be awarded.[9] Second, this court ruled in favor of Kaleikini on the merits of Counts 1 through 4. *Kaleikini*, 128 Hawai'i at 73, 81, 283 P.3d at 80, 88. This court remanded to the circuit court to determine the proper relief to be awarded on these counts. *Id.* at 81, 283 P.3d at 88. Thus, unlike in *Nelson*, this court's ruling in the instant case did not place the plaintiff "back where the plaintiff started[.]" 99 Hawai'i at 266, 54 P.3d at 437.

Accordingly, Kaleikini is the prevailing party on appeal for the purposes of attorney's fees.

## C. The private attorney general doctrine applies

■ "Normally, pursuant to the 'American Rule,' each party is responsible for paying

his or her own litigation expenses. This general rule, however, is subject to a number of exceptions: attorney's fees are chargeable against the opposing party when so authorized by statute, rule of court, agreement, stipulation, or precedent." *Superferry II,* 120 Hawai'i at 218, 202 P.3d at 1263 (brackets omitted) (quoting *Fought,* 87 Hawai'i at 50–51, 951 P.2d at 500–01). "This court has [also] recognized a number of equitable exceptions to the 'American Rule.'" *In re Water Use Permit Applications (Waiahole II ),* 96 Hawai'i 27, 29, 25 P.3d 802, 804 (2001). One such exception is provided by the private attorney general doctrine, which "is an equitable rule that allows courts in their discretion to award attorneys' fees to plaintiffs who have 'vindicated important public rights.'" *Id.; see also Superferry II,* 120 Hawai'i at 218, 202 P.3d at 1263 (quoting *Maui Tomorrow,* 110 Hawai'i at 244, 131 P.3d at 527).

■ This court considers three "basic factors" in determining whether the private attorney general doctrine applies: "(1) the strength or societal importance of the public policy vindicated by the litigation, (2) the necessity for private enforcement and the magnitude of the resultant burden on the plaintiff, [and] (3) the number of people standing to benefit from the decision." *Superferry II,* 120 Hawai'i at 218, 202 P.3d at 1263 (quoting *Maui Tomorrow,* 110 Hawai'i at 244, 131 P.3d at 527).

As set forth below, all three prongs of the private attorney general doctrine have been satisfied in the instant case. Accordingly, we may award attorney's fees to Kaleikini.[10] *See id.*

---

**9.** This court considers three "basic factors" in determining whether the private attorney general doctrine applies: "(1) the strength or societal importance of the public policy vindicated by the litigation, (2) the necessity for private enforcement and the magnitude of the resultant burden on the plaintiff, [and] (3) the number of people standing to benefit from the decision." *Superferry II,* 120 Hawai'i at 218, 202 P.3d at 1263 (quoting *Maui Tomorrow v. State,* 110 Hawai'i 234, 244, 131 P.3d 517, 527 (2006)).

**10.** The State makes several arguments as to why the private attorney general doctrine should not

apply. First, the State argues that Kaleikini should not be awarded fees because the legislature did not intend that private persons be awarded fees in HRS chapter 6E cases, except to the extent authorized by HRS § 607–25(e). The State appears to argue that HRS § 607–25(e) is the exclusive means for seeking attorney's fees in cases brought pursuant to HRS chapter 6E. Fees are not available pursuant to HRS § 607–25(e) in this case. HRS § 607–25(e) (Supp.2011) (providing for fees "[i]n any civil action in this State where a private party sues for injunctive relief against another private party who has been or is undertaking any development without obtaining

## 1. The strength or societal importance of the public policy vindicated by the litigation

Kaleikini asserts that this case has vindicated an issue of "great public importance[,]" specifically the historic preservation and protection of iwi. Kaleikini also asserts that this case vindicated at least four other important public policies: (1) the historic preservation review process is sequential and requires an AIS prior to the SHPD's concurrence in a project; (2) phasing of the historic preservation review process is impermissible; (3) standing may exist pursuant to HRS § 6E–13(b), even where an irreparable injury has not yet occurred; and (4) procedural injury is a basis for standing pursuant to HRS § 6E–13(b).

The City argues that the issue on which Kaleikini prevailed was "ultimately one of process that turned on the Court's interpretation of the definition of 'project area' in the applicable administrative regulations and not any constitutional right or provision[.]" (Emphasis in original). The State similarly argues that "this case is not about the protection of iwi[,]" but rather involves a "relatively arcane dispute as to how, not whether,

to protect the iwi[.]" Moreover, the State argues that application of the private attorney general doctrine in this case would "swallow the general American rule" because all laws involve important public policy interests or they "would not have been enacted in the first place."

Even assuming that the City and State are correct that the policies vindicated by this case are largely procedural, this court has found the first prong of the private attorney general doctrine satisfied in other similar circumstances. In *Superferry* II, this court considered whether the first prong was satisfied in a dispute over the need for an environmental assessment for the Hawaiʻi Superferry. 120 Hawaiʻi at 186–87, 202 P.3d at 1231–32. The prevailing party argued that this prong was satisfied because the litigation was "responsible for establishing the principle of procedural standing in environmental law in Hawaiʻi and clarifying the importance of addressing the secondary impacts of a project in the environmental review process pursuant to HRS chapter 343." *Id.* at 220, 202 P.3d at 1265. This court agreed. *Id.*

▇▇ Here, Kaleikini's case was responsible for clarifying the principle of procedural

all permits or approvals required by law from government agencies") (emphasis added).

This court rejected an argument similar to the State's in *Superferry II*, where it held that HRS § 607–25 is not the exclusive means for seeking fees in an action brought pursuant to HRS chapter 343 because HRS § 607–25 focuses on "development," which is only a narrow subset of actions that may lead to a violation of HRS § 343–5. 120 Hawaiʻi at 222–25, 202 P.3d at 1267–70. Although the underlying claims in *Superferry II* arguably involved a challenge to approval of a "development," *see id.* at 186, 202 P.3d at 1231 (noting that the project involved Hawaiʻi Superferry, Inc.'s proposal to "develop and operate a high-speed roll-on/roll-off ferry service"), this court nonetheless held that fees were available pursuant to the private attorney general doctrine, *id.* at 222–25, 202 P.3d at 1267–70. Similarly, here, HRS chapter 6E governs conservation of historic properties in a variety of contexts, and not solely in relation to "development." *See, e.g.,* HRS §§ 6E–8 and 6E–42. Accordingly, the State's argument is without merit for the reasons set forth in *Superferry II*.

Second, the State argues that this court should apply the test set forth in *Reliable Collection Agency v. Cole*, 59 Haw. 503, 507, 584 P.2d 107, 109 (1978), for determining whether attorney's fees are available. This argument is without

merit. The purpose of the *Reliable* test is to determine whether a statute implicitly provides a private right of action. *Id.* This inquiry focuses on whether a private party can sue to enforce a statute. *Cnty. of Hawaiʻi v. Ala Loop Homeowners*, 123 Hawaiʻi 391, 406 n. 20, 235 P.3d 1103, 1118 n. 20 (2010). It does not address whether a private party may recover attorney's fees.

Moreover, this court has never applied the *Reliable* test in considering whether an award of fees is appropriate pursuant to the private attorney general doctrine, *see Superferry II*, 120 Hawaiʻi at 219–25, 202 P.3d at 1264–70, and we decline to do so here. Application of the *Reliable* test would render the private attorney general doctrine wholly illusory: if the relevant statute reflects a legislative intent to award attorney's fees, then the "equitable powers of the judiciary to provide" such fees pursuant to the private attorney general doctrine, *Superferry II*, 120 Hawaiʻi at 219, 202 P.3d at 1264 (citation omitted), would be unnecessary. In contrast, if a statute is silent as to the availability of fees, the private attorney general doctrine would be unavailable. In light of this court's decision to award fees pursuant to the private attorney general doctrine in the face of legislative silence regarding fees, *id.* at 221–23, 202 P.3d at 1266–68, the State's argument is unpersuasive.

standing in historic preservation law in Hawai'i, and clarifying the importance of addressing impacts on historic properties prior to approval and commencement of projects that are subject to the provisions of HRS chapter 6E. *Kaleikini,* 128 Hawai'i at 71, 283 P.3d at 78; *see Superferry II,* 120 Hawai'i at 220, 202 P.3d at 1265. Accordingly, the first prong of the private attorney general doctrine is satisfied in this case.

### 2. The necessity for private enforcement and the magnitude of the resultant burden on the plaintiff

Kaleikini asserts that private enforcement was essential because she was solely responsible for challenging the City's failure to prepare an AIS prior to decision making and construction, and the City and State either completely abandoned, or actively opposed, her cause. The City responds that neither the City nor the State abandoned their duties under HRS chapter 6E, but rather erroneously believed that their plan was lawful. The State acknowledges that private enforcement may have been necessary, but argues that attorney's fees are not necessary because other private parties may have been "willing to pay market rates (indeed above market rates) to bring the suit if plaintiff had not done so." The State also asserts that NHLC could have represented Kaleikini pro bono.

A review of this court's case law concerning the second prong of the private attorney general doctrine is instructive. This court first examined the private attorney general doctrine in *Waiahole II,* and concluded that the second prong of the doctrine was not satisfied in that case. 96 Hawai'i at 31, 25 P.3d at 806. There, the underlying dispute concerned "water distributed by the Waiahole Ditch System, a major irrigation infrastructure on the island of Oahu[.]" *In re Water Use Permit Applications (Waiahole I ),* 94 Hawai'i 97, 110, 9 P.3d 409, 422 (2000). Following a lengthy and complex contested case hearing, the Commission on Water Resource Management (Commission) issued a final decision with respect to release of water from the System, which focused primarily on the "public trust doctrine." *Id.* at 110, 113, 9

P.3d at 422, 425. The Commission concluded that, "[u]nder the State Constitution and the public trust doctrine, the State's first duty is to protect the fresh water resources (surface and ground) which are part of the public trust res." *Id.* at 113, 9 P.3d at 425. On appeal, this court held, inter alia, that "article XI, section 1 and article XI, section 7 [of the Hawai'i Constitution] adopt the public trust doctrine as a fundamental principle of constitutional law in Hawai'i." *Id.* at 132, 9 P.3d at 444. Nevertheless, this court reversed in part the Commission's decision. *Id.* at 189, 9 P.3d at 501.

Subsequently, multiple public parties, denominated the Windward Parties, sought attorney's fees against both private and governmental parties involved in the dispute. *Waiahole II,* 96 Hawai'i at 28–29, 25 P.3d at 803–04. This court noted that, in cases from other jurisdictions in which the second prong of the private attorney general doctrine had been satisfied, "the plaintiffs served as the sole representative of the vindicated public interest. The government either completely abandoned, or actively opposed, the plaintiff's cause." *Id.* at 31, 25 P.3d at 806 (citations omitted). However, this court observed that the Windward Parties

represented one of many competing public and private interests in an adversarial proceeding before the governmental body designated by constitution and statute as the primary representative of the people with respect to water resources, the Commission on Water Resources Management. The Commission duly recognized its duties as trustee of state water resources, even to an extent further than this court deemed appropriate.... Nonetheless, the court made no rulings regarding the ultimate disposition of water resources, but simply remanded the matter to the commission for further findings and conclusions.

The relevant point, of course, is not the extent of the Windward Parties' success on appeal, but, rather, the role played by the government. In sum, unlike other cases, in which the plaintiffs single-handedly challenged a previously established government law or policy, in this case, the Windward Parties challenged the decision

of a tribunal in an adversarial proceeding not contesting any action or policy of the government. The Windward Parties cite no case in which attorneys' fees were awarded in an adversarial proceeding against a tribunal and the losing parties and in favor of the prevailing party, based on the reversal of the tribunal's decision on appeal. Nor does such a rule appear prudent from a policy standpoint, where public tribunals in adversarial settings must invariably consider and weigh various "public interests." Therefore, we hold that this case does not qualify for an award of attorneys' fees under the conventional application of the private attorney general doctrine.

*Id.* at 31–32, 25 P.3d at 806–07 (citations omitted).

Similarly, in *Maui Tomorrow*, this court determined that the second prong of the private attorney general doctrine had not been satisfied in an action where the plaintiff contested "a policy of the BLNR to lease water rights without performing the required analysis." 110 Hawai'i at 245, 131 P.3d at 528. This court concluded that the private attorney general doctrine was not applicable because the State "did not 'abandon' or 'actively oppose' [the plaintiff's] cause[,]" but rather concluded that an agency other than the BLNR was the appropriate agency to fulfill the State's duty. *Id.* This court also analogized *Maui Tomorrow* to *Waiahole II*, noting that *Maui Tomorrow*

> involve[d] an appeal from the decision of a tribunal in an adversarial proceeding, and the circuit court 'made no rulings regarding the ultimate disposition of water resources, but simply remanded the matter . . . for further findings and conclusions.' Like the Windward Parties [in *Waiahole II*, the *Maui Tomorrow* plaintiffs] cite[d] no cases in which fees were awarded against a tribunal and the losing parties based on the reversal of the tribunal's decision on appeal.

*Id.* (citation omitted).

In contrast, in *Superferry II*, this court found that the second prong of the private

attorney general doctrine was satisfied, where "the plaintiffs . . . were comprised of two non-profit organizations and an unincorporated association" who were "solely responsible for challenging [the Department of Transportation's (DOT)] erroneous application of its responsibilities under HRS chapter 343." 120 Hawai'i at 220, 202 P.3d at 1265. In that case, "DOT exempted the Superferry project from the requirements of HRS chapter 343 without considering its secondary impacts on the environment[,]" "[i]n contravention of its responsibilities under the laws of this state[.]" *Id.* at 221, 202 P.3d at 1266.

This court distinguished *Superferry II* from *Maui Tomorrow*, noting that, in *Maui Tomorrow*,

> the challenged government policy resulted from an erroneous understanding that another state agency was to perform the duty at issue. . . . In this case, DOT simply did not recognize its duty to consider both the primary and secondary impacts of the Superferry project on the environment. DOT was not under the erroneous understanding that another agency was considering those impacts, as in *Maui Tomorrow*; rather, in this case DOT wholly abandoned that duty by issuing an erroneous exemption to Superferry.

*Id.* (citation omitted).

Unlike the multiple public parties in *Waiahole II*, 96 Hawai'i at 28–29, 25 P.3d at 803–04, or even the "two non-profit organizations and an unincorporated association" in *Superferry II*, 120 Hawai'i at 220, 202 P.3d at 1265, the plaintiff in the instant case was Kaleikini—a single, private individual.[11] Kaleikini was solely responsible for challenging the City and State's erroneous application of HRS chapter 6E, and clarifying the City and State's responsibilities under the law. *See Superferry II*, 120 Hawai'i at 220–21, 202 P.3d at 1265–66.

■ The City and State argue that the instant case is similar to *Waiahole II* and *Maui Tomorrow* because SHPD did not

---

11. Accordingly, the State's argument that other private parties may have been "willing to pay market rates (indeed above market rates) to

bring the suit if plaintiff had not done so[,]" is unpersuasive.

wholly abandon its duties under the law, but rather recognized the necessity of an AIS and erroneously believed the study could be delayed. However, it is apparent from this court's opinion that the City and State acted "[i]n contravention of [their] responsibilities under the laws of this state," see *Superferry II*, 120 Hawai'i at 221, 202 P.3d at 1266, in concurring in the rail project and proceeding with construction prior to the completion of an AIS for all four phases of the project, *Kaleikini*, 128 Hawai'i at 57, 283 P.3d at 64 ("In sum, the SHPD failed to comply with HRS chapter 6E and its implementing rules when it concurred in the rail project prior to the completion of the required archaeological inventory survey for the entire project. The City similarly failed to comply with HRS chapter 6E and its implementing rules by granting a special management area permit for the rail project and by commencing construction prior to the completion of the historic preservation review process.").

Moreover, although the OIBC agreed with Kaleikini that the phased approach was impermissible, *id.* at 62–64, 283 P.3d at 69–71, the OIBC did not bring suit to enforce the provisions of HRS chapter 6E and took no position with regard to the City's motion for summary judgment, *see id.* at 65, 283 P.3d at 72. Thus, private enforcement by Kaleikini was necessary to ensure the City and State complied with HRS chapter 6E and its implementing rules.

Accordingly, the second prong of the private attorney general doctrine was satisfied in this case.

### 3. The number of people standing to benefit from the decision

Kaleikini asserts that "[t]he public at large benefits from a decision that ensures the integrity of the historic preservation review process." The City concedes that "the public generally benefits from this decision and the third prong may arguably be satisfied." The State argues that "the number of persons benefitted [sic] is indeterminate" because "there is no evidence that any significant number of persons are concerned about whether an AIS may be completed in phases."

In *Superferry II*, this court concluded that the third prong was satisfied where "this court's opinion … provided a public benefit, because it is generally applicable law that established procedural standing in environmental law and clarified the need to address secondary impacts in environmental review pursuant to HRS chapter 343 and will benefit large numbers of people over long periods of time." 120 Hawai'i at 221, 202 P.3d at 1266 (internal quotation marks omitted). In *Waiahole II*, this court concluded that "all of the citizens of the state, present and future, stood to benefit from the decision." 96 Hawai'i at 31, 25 P.3d at 806.

■ In the instant case, this court's opinion established "generally applicable law" regarding standing to enforce historic preservation laws. *See Superferry II*, 120 Hawai'i at 221, 202 P.3d at 1266. In addition, this court's opinion ensured that historic preservation laws will be enforced as written. The plain language of those laws supports a conclusion that the decision in this case benefits all citizens of the State:

> The Constitution of the State of Hawaii recognizes the value of conserving and developing the historic and cultural property within the State <u>for the public good</u>.... The legislature further declares that <u>it is in the public interest</u> to engage in a comprehensive program of historic preservation at all levels of government to promote the use and conservation of such property....

HRS § 6E–1 (2009) (emphasis added).

Accordingly, the third prong of the private attorney general doctrine was satisfied in this case.

In sum, all three prongs of the test for the private attorney general doctrine have been satisfied. Accordingly, we award Kaleikini reasonable attorney's fees pursuant to the private attorney general doctrine.

### D. Kaleikini's request for attorney's fees against the State is barred by sovereign immunity

This court has noted that:

The doctrine of sovereign immunity refers to the general rule, incorporated in the Eleventh Amendment to the United States Constitution, that a state cannot be sued in federal court without its consent or an express waiver of its immunity. The doctrine of sovereign immunity, as it has developed in Hawai'i, also precludes such suits in state courts.

*State ex rel. Anzai v. Honolulu*, 99 Hawai'i 508, 515, 57 P.3d 433, 440 (2002) (citations and footnote omitted).

Pursuant to the doctrine of sovereign immunity, "the sovereign State is immune from suit for money damages, except where there has been a clear relinquishment of immunity and the State has consented to be sued." *Bush v. Watson*, 81 Hawai'i 474, 481, 918 P.2d 1130, 1137 (1996) (citations and internal quotation marks omitted). This court has recognized that "an award of costs and fees to a prevailing party is inherently in the nature of a damage award." *Superferry II*, 120 Hawai'i at 226, 202 P.3d at 1271 (quotation marks omitted) (quoting *Fought*, 87 Hawai'i at 51, 951 P.2d at 501). Accordingly, to properly award attorney's fees and costs against the State, "there must be 'a clear relinquishment' of the State's immunity[.]" *Id.* (quoting *Bush*, 81 Hawai'i at 481, 918 P.2d at 1137). For the reasons set forth below, the State has not waived its sovereign immunity for an award of attorney's fees and costs in the circumstances of this case.

This court has noted that the State has waived immunity to suit only to the extent as specified in HRS chapters 661 and 662.[12] *Taylor–Rice v. State*, 105 Hawai'i 104, 110, 94 P.3d 659, 665 (2004) (citations omitted). HRS § 661–1(1) "contains a limited waiver of sovereign immunity for claims against the State of Hawai'i that are founded upon a statute[.]"[13] *Garner v. State, Dep't of Educ.*, 122 Hawai'i 150, 160, 223 P.3d 215, 225 (App.2009). In determining the extent of the State's waiver of sovereign immunity, this court relies on the following principles derived from federal law:

> (1) a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign; (2) a waiver of sovereign immunity must be unequivocally expressed in statutory text; (3) a statute's legislative history cannot supply a waiver that does not appear clearly in any statutory text; (4) it is not a court's right to extend the waiver of sovereign immunity more broadly than has been directed by the [legislature]; and (5) sovereign immunity is not to be waived by policy arguments[.]

*Taylor–Rice*, 105 Hawai'i at 110, 94 P.3d at 665 (citations, internal quotation marks, and brackets omitted).

In the instant case, Kaleikini argues that the State waived its sovereign immunity pursuant to HRS § 6E–13(b) and article XI, section 9 of the Hawai'i Constitution. For the reasons set forth below, neither HRS § 6E–13(b) nor article XI, section 9 waives the State's sovereign immunity.

### 1. HRS § 6E–13(b) does not waive the State's sovereign immunity

Kaleikini relies primarily on *Superferry II* in arguing that the State waived its immunity for fees pursuant to HRS § 6E–13(b). There, this court concluded that the State waived its sovereign immunity pursu-

---

**12.** HRS § 662–2 (1993) waives the State's immunity to suit for liability for the torts of its employees and is not applicable here.

**13.** HRS § 661–1 (1993) provides, in pertinent part:

> The several circuit courts of the State and, except as otherwise provided by statute or rule, the several state district courts shall, subject to appeal as provided by law, have original jurisdiction to hear and determine the following matters, and, unless otherwise provided by law, shall determine all questions of fact involved without the intervention of a jury.

> (1) All claims against the State founded upon any statute of the State; or upon any regulation of an executive department; or upon any contract, expressed or implied, with the State, and all claims which may be referred to any such court by the legislature; provided that no action shall be maintained, nor shall any process issue against the State, based on any contract or any act of any state officer which the officer is not authorized to make or do by the laws of the State, nor upon any other cause of action than as herein set forth.

(Emphasis added).

ant to HRS § 343-7, because that statute authorizes judicial review of specified agency decisions. 120 Hawai'i at 226–28, 202 P.3d at 1271–73. Although HRS § 343-7 does not expressly waive the State's immunity for attorney's fees resulting from such judicial review, this court nonetheless concluded that the State's liability for fees was "to be judged under the same principles as those governing the liability of private parties." *Id.* at 229, 202 P.3d at 1274. Accordingly, fees could be awarded against the State based on the private attorney general doctrine. *Id.* at 230, 202 P.3d at 1275.

HRS § 6E-13(b) is distinguishable from HRS § 343-7, and a waiver of the State's sovereign immunity cannot similarly be implied from HRS § 6E-13(b). This is because HRS § 6E-13(b) (2009) allows suit to be brought only for a restraining order or injunctive relief:

> Any person may maintain an action in the trial court having jurisdiction where the alleged violation occurred or is likely to occur for <u>restraining orders or injunctive relief</u> against the State, its political subdivisions, or any person upon a showing of irreparable injury, for the protection of an historic property or a burial site and the public trust therein from unauthorized or improper demolition, alteration, or transfer of the property or burial site.

(Emphasis added).

It is well settled that a provision allowing for declaratory or injunctive relief is not a <u>waiver</u> of the State's sovereign immunity, but rather an <u>exception</u> to the sovereign immunity doctrine for which no waiver is necessary. *Superferry II,* 120 Hawai'i at 229 n. 30, 202 P.3d at 1274 n. 30 ("Where a party seeks only injunctive relief, the ability to sue the state does not stem from a waiver of sovereign immunity, but from the fact that sovereign immunity does not bar the suit in the first place."). Indeed, *Superferry II* expressly recognized the distinction between a claim brought pursuant to HRS § 343-7 and one seeking only injunctive relief. *Id.* (noting that the case relied on by the dissent in *Superferry II, Taomae v. Lingle,* 110 Hawai'i 327, 132 P.3d 1238 (2006), was distinguishable because it involved a suit for injunctive relief

and therefore involved "no statutory waiver of sovereign immunity for the underlying action").

Accordingly, HRS § 6E-13(b) does not contain a waiver of the State's sovereign immunity.

### 2. Article XI, section 9 of the Hawai'i Constitution does not waive the State's sovereign immunity

██ Kaleikini relies primarily on *Ala Loop Homeowners* in arguing that the State waived its immunity to fees pursuant to article XI, section 9 of the Hawai'i Constitution. There, this court concluded that article XI, section 9 contained an implied private right of action to enforce the provisions of HRS chapter 205 and other "laws relating to environmental quality." 123 Hawai'i at 409–17, 235 P.3d at 1121–29. Accordingly, Ala Loop Homeowners was permitted to assert its claims. *Id.* at 422, 235 P.3d at 1134. However, this court subsequently denied Ala Loop Homeowners' request for attorney's fees and costs on the ground that there had been no "clear relinquishment" of the State's sovereign immunity. *Cnty. of Hawai'i v. Ala Loop Homeowners,* No. 27707 (Haw. Mar. 21, 2011)(Order).

There are several reasons why article XI, section 9 does not waive the State's sovereign immunity in this case. First, the Hawai'i Constitution does not waive the State's sovereign immunity pursuant to HRS § 661–1 because claims based on the constitution are not "founded upon any statute of the State[.]" *Kaho'ohanohano v. State,* 114 Hawai'i 302, 338, 162 P.3d 696, 732 (2007). Second, it is not apparent that article XI, section 9 applies to Kaleikini's claims, as it pertains to "laws relating to environmental quality, including control of pollution and conservation, protection and enhancement of natural resources." Haw. Const. art. XI, § 9. Finally, nothing in the plain language of article XI, section 9 clearly relinquishes the State's sovereign immunity with respect to attorney's fees. Article XI, section 9 provides:

> Each person has the right to a clean and healthful environment, as defined by laws relating to environmental quality, including control of pollution and conservation, pro-

tection and enhancement of natural resources. Any person may enforce this right against any party, public or private, through appropriate legal proceedings, subject to reasonable limitations and regulation as provided by law.

■ This provision must be strictly construed. *See Taylor–Rice*, 105 Hawai'i at 110, 94 P.3d at 665. Nothing in article XI, section 9 expressly waives the State's immunity for attorney's fees.

In sum, there has been no clear relinquishment of the State's sovereign immunity, and thus the State's immunity bars Kaleikini's request for fees based on the private attorney general doctrine.[14]

**E. Although the fees requested by Kaleikini are generally reasonable, we deny some of the hours requested and reduce the attorneys' requested hourly rates**

■ Kaleikini requests a total of $54,995.00 in fees in relation to her appeal. Specifically, Kaleikini requests $48,440.00 for 138 hours of work performed by Frankel, and $6,555.00 for 34.5 hours of work performed by Obrey. This court employs the "lodestar" method in determining a reasonable attorney's fee. *DFS Group L.P. v. Paiea Props.*, 110 Hawai'i 217, 222, 131 P.3d 500, 505 (2006). Under the lodestar method, the court multiplies the number of hours reasonably expended by a reasonable hourly rate. *Id.*

The City argues that the hours billed by Kaleikini's attorneys are not reasonable because she should not recover fees for (1) her unsuccessful claims; (2) work that was duplicative, clerical, or insufficiently documented; and (3) amounts which otherwise are not recoverable due to the State's sovereign immunity. Additionally, the City argues that the requested hourly rates are not reasonable.

For the reasons set forth below, (1) Kaleikini can recover fees for work attributable to

all of her claims pursuant to *Schefke v. Reliable Collection Agency, Ltd.*, 96 Hawai'i 408, 444, 32 P.3d 52, 88 (2001); (2) the City has not specifically challenged any of the charges as duplicative, clerical, or insufficiently documented; (3) the City is not liable for fees that are directly attributable to other parties; and (4) a lower hourly rate than that requested by Kaleikini's attorneys is reasonable.

**1. Kaleikini can recover fees for work attributable to Counts 5 and 6**

The City and State argue that Kaleikini should not recover all of her fees because she did not prevail on two of her claims, i.e., her HRS chapter 343 claim (Count 5) and her HRS chapter 205A claim (Count 6). The City and State note that Kaleikini's fee request does not ascribe her fees to particular claims, and argue that Kaleikini should have allocated the fees to discrete claims so that this court could discount fees attributable to unsuccessful claims. Because Kaleikini did not allocate her fees to discrete claims, the State requests that Kaleikini's fees be reduced by 50%. The City requests that the fees be reduced by two-thirds because Kaleikini "only prevailed on one out of three statutory grounds[.]"

In *Schefke*, this court articulated the following test, derived from *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), for determining "whether a partially prevailing plaintiff may recover an attorney's fee for legal services on unsuccessful claims":

> the trial court must determine (1) whether or not unsuccessful claims are related to successful claims, and (2) whether or not the plaintiff achieved a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award. Unsuccessful claims are deemed unrelated if they are distinctly different claims for relief that are based on different facts and legal theories. Thus, even where the claims are brought against the same defen-

---

14. The State also has not waived its immunity for costs. HRS § 607–24 waives the State's immunity for costs "[i]n all cases in which a final judgment or decree is obtained against the State[.]" This provision is to be strictly construed. *See Taylor–Rice*, 105 Hawai'i at 110, 94 P.3d at 665. Because Kaleikini has not yet obtained a final judgment or decree against the State, the State's immunity bars her request for costs.

dants, counsel's work on one claim may be unrelated to his or her work on another claim, work on such an unsuccessful claim cannot be deemed to have been expended in pursuit of the ultimate result achieved, and the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee.

On the other hand, if the plaintiff's claims for relief involve a common core of facts or are based on related legal theories and much of counsel's time is devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis, such a lawsuit cannot be viewed as a series of discrete claims. In that situation, a plaintiff who has won substantial relief should not have his or her attorney's fee reduced simply because the trial court did not adopt each contention raised.

As to the required level of success, where a plaintiff has obtained excellent results, his or her attorney should recover a fully compensatory fee because litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. If, on the other hand, a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith.

*Schefke*, 96 Hawai'i at 444, 32 P.3d at 88 (citations, internal quotation marks, brackets, ellipses, and footnote omitted).

■ Kaleikini's case would appear to be precisely the type of case envisioned by the *Schefke* court as allowing for an award of fees attributable to unsuccessful claims. First, Kaleikini's unsuccessful claims were related to her successful claims. *See id.* All six claims involved a common core of facts, i.e., the City and State's decision to proceed with the rail project absent a completed AIS. *Kaleikini*, 128 Hawai'i at 60–61, 283 P.3d at 67–68. In addition, although the claims were based on different statutory provisions, they all were based on a related legal theory, i.e., that a completed AIS was required prior to any decision making on the project. *Id.* Moreover, this would appear to be a case in which "much of counsel's time is devoted generally to the litigation as a whole[.]" *Schefke*, 96 Hawai'i at 444, 32 P.3d at 88. For example, the argument section of Kaleikini's opening brief was approximately 23 pages long. The first four pages of argument provided an overview of laws applicable to all six of Kaleikini's claims. Approximately 13 pages were dedicated to her successful claims. Approximately six pages were dedicated to her unsuccessful claims. Although the arguments concerning her unsuccessful claims cited different statutory provisions and case law, the facts and legal principles relied on were nearly identical to those cited in relation to her successful claims, including the importance of native Hawaiian burials and the potential for negative consequences if an AIS is not completed early in the planning process.

Second, Kaleikini "achieved a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." *Id.* (brackets omitted). In this regard, Kaleikini's case is nearly indistinguishable from *Hensley*, which was cited with approval in *Schefke*. 96 Hawai'i at 444 n. 78, 32 P.3d at 88 n. 78. In *Hensley*, the plaintiffs raised six constitutional challenges, and the trial court found constitutional violations in five of those areas. 461 U.S. at 427–28, 103 S.Ct. 1933. The Court stated:

> In this case, for example, the District Court's award of fees based on 2,557 hours worked may have been reasonable in light of the substantial relief obtained. But had [the plaintiffs] prevailed on only one of their six general claims, ... a fee award based on the claimed hours clearly would have been excessive.

*Id.* at 436, 103 S.Ct. 1933 (internal citation omitted).

Here, Kaleikini obtained relief on four of her six claims, and on the primary issue raised in her appeal. In light of this substantial relief, and the relationship between her successful and unsuccessful claims, she

may recover fees attributable to her unsuccessful claims.

## 2. The City has not specified which billing entries it views as duplicative, clerical, or insufficiently documented

The City asserts that some of Kaleikini's fees are duplicative, associated with clerical tasks, and insufficiently documented. The City does not specify which charges it is challenging.

This court has declined to discount fees where the opponent fails to argue that hours spent on any particular task are unreasonable. *Cnty. of Hawai'i v. C & J Coupe Family Ltd. P'ship*, 120 Hawai'i 400, 407, 208 P.3d 713, 720 (2009) ("The County does not argues that . . . the number of hours expended on any particular task is unreasonable. . . . [A]ttorneys' fees must be awarded . . . for the number of hours requested."); *see also Rapozo v. Better Hearing of Haw., LLC*, 120 Hawai'i 257, 265, 204 P.3d 476, 484 (2009) ("Respondent does not challenge any item on this list or otherwise object to the reasonableness of the requested fees. Consequently, Petitioner's request for $8,658.00 in attorney fee is granted."). Moreover, a review of Kaleikini's request does not indicate that any of the requested fees are duplicative, clerical, or insufficiently documented.

Accordingly, the City's argument is without merit.

## 3. Some of Kaleikini's requested fees are attributable only to the State, and are not recoverable against the City

The City argues that Kaleikini should not be permitted to recover from the City "amounts that would have been attributable to [the State], but for which [Kaleikini] cannot recover due to the State's sovereign immunity." Accordingly, the City argues, "if sovereign immunity bars any recovery against [the State], any award against [the City] should be reduced accordingly." The City cites no authority in support of this

argument. Kaleikini argues that the City and State worked "hand-in-hand" on the rail project, and accordingly that all of her fees are recoverable against the City pursuant to *Superferry II*.

*Superferry II* is not directly on point. There, this court considered whether the private attorney general doctrine could serve as a basis for recovery of attorney's fees against a private party, Hawai'i Superferry, Inc. (Superferry), and concluded there was "no reason not to apply the private attorney general doctrine to a private defendant." 120 Hawai'i at 224–25, 202 P.3d at 1269–70. In so doing, this court noted:

> [I]n this case Superferry worked hand-in-hand with DOT throughout the planning and implementation of the Superferry project and throughout this litigation, in promoting its own private business interests. Under these facts, we see no unfairness in requiring Superferry, jointly with DOT, to pay Sierra Club's attorney's fees awarded by the circuit court.

*Id.* at 225, 202 P.3d at 1270.

*Superferry II* indicates that, had an award against the State not been barred by sovereign immunity, the City would have been jointly and severally liable for all of Kaleikini's fees. Accordingly, there is some basis for allowing Kaleikini to recover all of her fees against the City. At the same time, *Superferry II* is not directly on point because it did not resolve the question at issue here, i.e., whether a defendant may be held liable for the full award of attorney's fees, where an award against a co-defendant is barred by sovereign immunity.

In the instant case, we conclude that it is reasonable for Kaleikini to recover against the City for all of the work performed, except for work that is clearly identifiable as being directed at another party, such as Kaleikini's replies to the State and FACE/PRP. Allowing Kaleikini to recover against the City for work that was directed at all parties (such as the opening brief and transfer application) is reasonable in light of

the City having taken a leading role in the appeal and in the trial court. For example, the City's answering brief was 35 pages long and addressed each of the Counts in Kaleikini's complaint, including Count 5, which ran only against the State. In contrast, the State's answering brief was 15 pages long and addressed only Counts 1 through 4.

Kaleikini's billing records clearly indicate that 18 hours of Frankel's time and 2.8 hours of Obrey's time cannot be fairly attributed to addressing the City:

| Attorney | Date | Activity | Hours |
|----------|------|----------|-------|
| Frankel | 1/4/12 | Draft reply to State Answering Brief | 3.2 |
| Frankel | 1/5/12 | Draft reply to State Answering Brief | 4.5 |
| Frankel | 1/10/12 | Draft reply to State | 0.8 |
| Frankel | 9/5/12 | Memo in Opp to Amicus | 3.3 |
| Frankel | 9/12/12 | Opp to Amicus Recon Brief | 6.2 |
| Obrey | 1/9/12 | Review/Revise Reply to State | 0.7 |
| Obrey | 1/11/12 | Revise Reply to State | 0.3 |
| Obrey | 9/5/12 | Review FACE/PRP motion for leave to file amicus brief | 0.3 |
| Obrey | 9/5/12 | Draft memo in opp to FACE/PRP motion for leave to file amicus brief | 1.0 |
| Obrey | 9/10/12 | Review amicus brief to determine if meheula complied with court's order[.] | 0.5 |

Based on the foregoing, we grant Kaleikini's request for fees for 120.4 hours of work performed by Frankel (138.4 requested hours minus 18 hours) and 31.7 hours of work performed by Obrey (34.5 requested hours minus 2.8 hours).

### 4. The requested hourly rate is not reasonable

Kaleikini requests that attorney Frankel be awarded fees at a rate of $350.00 per hour, and that attorney Obrey be awarded fees at a rate of $190.00 per hour. Both the City and Kaleikini agree that a reasonable attorney's fee should be calculated according to prevailing market rates in the relevant community. (Citing Blum v. Stenson, 465 U.S. 886, 895, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)).

Kaleikini asserts that her requested rates are at or below prevailing market rates in the community. Kaleikini submits two declarations in support of this assertion. First, Kaleikini attached a declaration from Matthew Adams, who declared that he is a California attorney who represents the plaintiffs in a federal lawsuit relating to the rail project, Honolulutraffic.com, et al. v. Federal Transit Administration, et al., Civ. No. 11–00307 AWT. He declared that his hourly rate in that case was $570.00, and that his co-counsel's rate was $800.00 per hour. Additionally, he declared that the federal case involved issues similar to those in the instant case. Kaleikini also attached a declaration of James J. Bickerton, who declared that the rates requested by Kaleikini's attorneys were "at or below the prevailing market hourly rate for professionals of similar experience, skill and competence."

The City argues that Kaleikini's requested rates are not reasonable. The City does not suggest an alternative rate that would be reasonable, but points to cases in both state and federal courts in Hawai'i in which attorneys were compensated at lower rates than those requested here. In response, Kaleikini cites to cases in both state and federal courts in which attorneys were compensated at the same or higher rates as those requested here.

The most recent state case cited by the parties that addresses hourly rates is C & J Coupe. There, the requested hourly rate was not challenged by the opposing party, and this court determined that the rates "appear[ed] to be reasonable[.]" 120 Hawai'i at 407, 208 P.3d at 720. The rates were as follows:

| | |
|---|---|
| Kenneth R. Kupchak | $335–350 |
| Robert H. Thomas | $300–325 |
| Mark M. Murakami | $220–230 |
| Robert D. Harris | $190 |
| Christie–Anne H. Kudo–Chock | $145–150 |
| Cherise Agua–Andrews | $145 |
| Eugenie–Mae Kincaid | $130 |

*Id.*[15]

In a recent unpublished federal district court order in *Olson v. Lui*, No. 10–00691 ACK–RLP, 2012 WL 3686682 (D.Haw. Aug. 27, 2012), the court awarded attorney's fees at the following rates:

| | |
|---|---|
| Paul Alston | $450 |
| Pamela W. Bunn | $270 |
| Shellie Park–Hoapili | $200 |
| Noreen M. Kanada | $100 |
| Gail Pang | $50 |

*Id.* at *2–5.

The order indicated that Alston had more than 40 years of experience, Bunn had 15, and Park–Hoapili had almost seven.[16] *Id.* at *3–4.

 Here, Frankel was admitted to practice in 1992 (20 years prior to the 2012 decision in *Kaleikini* ), and Obrey in 2009 (3 years). Using the foregoing rates as a guide, we conclude that $300.00 per hour is a reasonable hourly rate for Frankel, and $160.00 is a reasonable hourly rate for Obrey. These rates are well within the range of associate and partner rates listed in the Pacific Business News 2012 Book of Lists, which was attached to Kaleikini's request as Appendix C.[17]

Based on the foregoing, we grant Kaleikini's request for fees in the amount of $36,120.00 for work performed by Frankel (120.4 hours × $300.00 per hour), and $5,072.00 for work performed by Obrey (31.7 hours × $160.00 per hour), for a total award of $41,192.00.

**F. Kaleikini is not entitled to an enhancement of the lodestar amount**

Kaleikini asks that this court enhance her attorney's fee award by a multiplier of two, based on this court's opinion in *Schefke.* The City argues that an enhancement is not available under *Schefke,* nor is it supported by the policies underlying *Schefke.* The City also argues that an enhancement by a multiplier of two would be unreasonable. Kaleikini responds that an enhancement is supported by the reasoning in *Schefke,* and that *Schefke* expressly leaves the door open for an enhanced award for non-profit public interest law firms. For the reasons set forth below, Kaleikini's argument is without merit.

In *Schefke,* the trial court awarded fees based on the lodestar method, but denied the plaintiff's request for a multiplier. 96 Hawai'i at 419, 32 P.3d at 63. On appeal, this court vacated the fee award on other grounds, and also addressed the enhancement issue. *Id.* at 445, 32 P.3d at 89. After reviewing conflicting federal case law concerning enhancements, *id.* at 445–51, 32 P.3d at 89–95, this court held that "where a court awards attorney's fees pursuant to fee-shifting statutes in

---

**15.** Although the opinion did not list the years of experience for each attorney, a review of the Hawai'i State Bar Association's 2009–2010 Annual Directory indicates that Kupchak was admitted to practice in 1971 (38 years prior to the 2009 decision in *C & J Coupe* ), Thomas in 1987 (22 years), Murakami in 1999 (10 years), Harris in 2002 (7 years), and Kudo–Chock in 2007 (2 years). Agua–Andrews and Kincaid are not listed in the Directory.

**16.** It appears that Kanada and Pang were paralegals. *Olson,* 2012 WL 3686682 at *5.

**17.** The list provides a range of partner billing rates from $150.00 to $595.00 at the top 50 ranked firms. The list provides a range of associate billing rates from $120.00 to $300.00 at the same firms.

cases involving contingency fee arrangements," the contingent fee arrangement does not place a ceiling on the amount of fees recoverable, *id.* at 450–51, 32 P.3d at 94–95. Thus, "should a fee agreement provide less than a reasonable fee, the defendant should nevertheless be required to pay the higher amount." *Id.* at 451, 32 P.3d at 95 (brackets and ellipses omitted) (quoting *Blanchard v. Bergeron*, 489 U.S. 87, 93, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989)). This court continued:

> For example, if a nonprofit legal service organization represents a plaintiff and agrees to receive no compensation from the plaintiff, that fact will not bar the plaintiff from obtaining a reasonable fee award when he or she prevails. Thus, in this case, the fact that doubling Plaintiff's lodestar fees would result in more fees than Plaintiff agreed to pay his attorney should not in itself prevent Plaintiff from receiving that amount. However, if the doubled amount exceeds a "reasonable" fee, Plaintiff is not entitled to the exceeded amount.

*Id.* at 451, 32 P.3d at 95.

In sum, this court concluded that "our courts should be given discretion to enhance the lodestar fee when an attorney has been retained on a contingency fees basis." *Id.* at 452, 32 P.3d at 96.

By its clear terms, the holding in *Schefke* does not apply in the instant case. First, *Schefke* was clearly limited to cases involving fee-shifting statutes. *Id.* at 454, 32 P.3d at 98 ("We note that this holding applies only to statutes with fee-shifting provisions enacted to encourage the enforcement of law through lawsuits filed by private persons." (internal quotation marks, ellipses, and citation omitted)). Here, however, Kaleikini seeks fees pursuant to the private attorney general doctrine, rather than a fee-shifting statute.

Second, *Schefke* is clearly limited to cases taken on a contingency basis:

A court must first determine whether a case was taken on a contingency basis because if a client has contracted to pay the lodestar fee, regardless of the outcome of the case, and has paid the attorney on a continuing basis, then the attorney has clearly avoided the risk of nonpayment and enhancement is not appropriate.

*Id.* at 454, 32 P.3d at 98 (internal quotation marks, ellipses and brackets omitted).

Here, NHLC did not take Kaleikini's case on a contingency basis. Although Kaleikini asserts that, "[i]n this case, the payment of any fees was purely contingent on prevailing on the merits[,]" (emphasis added), she acknowledges that there was no contingent fee arrangement by which she would pay NHLC in the event she prevailed.

Nevertheless, Kaleikini points to the following sentence from *Schefke* as indicating that her fee request was intended to be covered by the *Schefke* rule: "For example, if a nonprofit legal service organization represents a plaintiff and agrees to receive no compensation from the plaintiff, that fact will not bar the plaintiff from obtaining a reasonable fee award when he or she prevails." *Id.* at 451, 32 P.3d at 95. However, read in context, it is not apparent that this sentence was intended to extend the *Schefke* enhancement rule to circumstances in which a legal service organization represents a client without the expectation of compensation. Rather, it appears that this court viewed such a circumstance as analogous to an enhancement, in that the legal service provider could receive more fees from the defendant than what the plaintiff had originally contracted to pay.[18] Moreover, this single statement is not sufficient to override the repeated statements by the *Schefke* court that the holding there was specific to contingency fee arrangements. *See, e.g., id.* at 450–51, 32 P.3d at 94–95 (allowing enhancements "where a court awards attorney's fees pursuant to fee-shifting statutes in cases involving contingency fee arrangements"); *id.* at 454, 32 P.3d at

18. The enhancement is designed to prevent the contingent fee from being a "ceiling" on the attorney's compensation. *See id.* at 450, 32 P.3d at 94. Put another way, under a contingency arrangement, an attorney may contract to receive less than a reasonable fee—and less than the lodestar amount—from his or her client. However, the enhancement allows the attorney to receive a reasonable fee award from the defendant, even if that fee exceeds what the client would have paid the attorney under the contingency arrangement.

98 (noting that one of three factors a court must consider in determining whether to award an enhancement is "whether a case was taken on a contingent basis" (internal quotation marks and citation omitted)).

■ Moreover, the policies underlying *Schefke* do not support an extension of the enhancement rule to the circumstances of this case. The purpose of an enhancement in contingency fee cases is to ensure that the attorney is awarded a reasonable fee. *See id.* at 451, 32 P.3d at 95. "Contingency enhancements merely compensate lawyers at market rates for services lawyers provide to clients who win." *Id.* at 453, 32 P.3d at 97 (quoting Charles Silver, *Incoherence and Irrationality in the Law of Attorneys' Fees*, 12 Rev. Litig. 301, 332 (1993)). Although *Schefke* clearly states that the fee may be enhanced beyond the lodestar, "[t]here is a 'strong presumption' that the lodestar represents the 'reasonable' fee." *Id.* at 443 n. 72, 32 P.3d at 87 n. 72 (quotation marks and brackets omitted); *see also Perdue v. Kenny A.*, 559 U.S. 542, ——, 130 S.Ct. 1662, 1673, 176 L.Ed.2d 494 (2010) ("'[T]here is a 'strong presumption' that the lodestar figure is reasonable, but that presumption may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee.").

■ Here, Kaleikini offers no argument to rebut the presumption that the lodestar is reasonable. The only factors she relies on in asserting that she is entitled to a multiplier of two are (1) any award of fees in this case was contingent on Kaleikini prevailing and seeking fees from defendants; (2) her attorneys' time could have been spent representing "other deserving native Hawaiians"; and (3) this court's decision involved "significant and broad issues of great public interest." However, these factors do not establish that the lodestar is unreasonable, or that an enhancement is necessary to achieve a reasonable fee.

■ Finally, it should be noted that Kaleikini's requested enhancement exceeds the multiplier that is ordinarily awarded. *Schefke*, 96 Hawai'i at 455, 32 P.3d at 99.

Although the enhancement in "typical contingency cases rang[es] between twenty and thirty-five percent of the lodestar[,]" *id.*, Kaleikini requests a multiplier of two, i.e., one hundred percent of the lodestar. Such an enhancement is exceedingly rare, *id.* at 455–56 n. 102, 32 P.3d at 99–100 n. 102 (noting that a 100% enhancement had been awarded only in civil rights cases and only three times between 1980 and 1985), and

> will be appropriate only in the rare and exceptional case in which the risk of non-payment has not been mitigated at all, i.e., where the "legal" risk constitutes an economic disincentive independent of that created by the basic contingency in payment and the result achieved is significant and of broad public interest.

*Id.* at 456, 32 P.3d at 100 (brackets omitted)(quoting *Rendine v. Pantzer*, 141 N.J. 292, 661 A.2d 1202, 1231 (1995)).

Kaleikini has not presented any argument to support such an extraordinary multiplier. Moreover, the prospect of Kaleikini receiving any fees in this case, even if she prevailed, was entirely speculative in light of this court's limited case law on the private attorney general doctrine. Thus, it does not appear that lack of payment was an economic disincentive for her counsel. Additionally, although this case was significant and the public will benefit from the decision, "the result achieved cannot be said to be of such significant and broad interest as to justify a multiplier of two." *See id.* (internal quotation marks and ellipses omitted).

In sum, *Schefke* does not apply and Kaleikini offers insufficient argument to rebut the presumption that the lodestar represents a reasonable fee. Accordingly, the imposition of an enhancement in this case is unwarranted.

### G. Kaleikini is entitled to her requested costs

Kaleikini asserts that she incurred $343.00 in costs relating to her appeal, consisting of $275.00 in court costs for the filing of the appeal and $68.00 for the cost of printing briefs and appendices on appeal (170 pages × 4 copies at 10¢ per page). Kaleikini asserts that these costs are au-

thorized pursuant to HRAP Rule 39(c) (2012), which provides, "Costs in the appellate courts are defined as: ... (3) the fee for filing the appeal; [and] (4) the cost of printing or otherwise producing necessary copies of briefs and appendices, provided that copying costs shall not exceed 20¢ per page[.]"

The City objects to some of Kaleikini's requested costs relating to work in the trial court, but does not specifically object to any of the costs Kaleikini requests in relation to her appeal.[19] At the same time, the City argues that Kaleikini's "only possible recoverable cost is the $275 appellate filing fee." The City does not explain why Kaleikini's $68.00 in costs for copying briefs and appendices should be disallowed.

■■■ Recovery of the $275.00 appellate filing cost is expressly permitted pursuant to HRAP Rule 39(c)(3), and the City does not object to this cost item. Accordingly, we grant Kaleikini's request for $275.00 in appellate filing costs.

In addition, Kaleikini's copying costs are expressly recoverable under HRAP Rule 39(c)(4). This court has noted that costs recoverable pursuant to HRAP Rule 39(c)(4) include "those briefs encompassed by HRAP Rule 28, including the number of copies required by HRAP Appendix A." *Kamalu v. ParEn, Inc.*, 110 Hawai'i 269, 279, 132 P.3d 378, 388 (2006). In addition, HRAP Rule

32.1 requires parties to deliver to the appellate clerk paper copies of the documents specified in HRAP Appendix A, which includes four copies of opening, answering, and reply briefs.

Here, Kaleikini's opening brief consisted of 43 pages and the attached appendices consisted of 128 pages, for a total of 171 pages. Accordingly, Kaleikini's request for $68.00 in copying costs (170 pages × 4 copies at 10¢ per page) is reasonable, and would appear to be less than Kaleikini actually expended.[20] We therefore grant Kaleikini's request for $68.00 in copying costs.

Based on the foregoing, we grant Kaleikini's request for costs in the amount of $343.00.

## III. CONCLUSION

Kaleikini's request for appellate attorney's fees and costs is granted against the City in the amount of $41,192.00 in attorney's fees and $343.00 in costs. Kaleikini's request for trial level fees and costs is denied, without prejudice to her seeking those fees and costs in the circuit court.

---

19. The State does not provide any argument with respect to Kaleikini's costs.

20. Additionally, it appears that Kaleikini has not sought costs for her reply briefs.